IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-HC-2263-D

| | |
|---|---|
| TERRENCE WAYNE LYTLE, | ) |
| | ) SUPPORTING MEMORANDUM |
| Petitioner, | ) 28 U.S.C. § 2254 |
| v. | ) Local Civil Rule 7.2 |
| | ) |
| LAWRENCE PARSONS, Administrator, | ) |
| Lanesboro Correctional Institution, | ) |
| | ) |
| Respondent. | ) |

**Summary of the Nature of the Case**

Petitioner is prisoner of the State of North Carolina, who, on March 19, 2009, in the Superior Court of Wake County, Honorable Paul C. Ridgeway, judge presiding, was convicted after trial by jury of felonious possession of stolen goods, two counts of breaking and entering, three counts of felonious larceny, and attaining habitual felon status, and was sentenced to two consecutive terms of 120-153 months imprisonment, in cases 08 CRS 5798, 6459-61, and 30197. On June 15, 2010, the North Carolina Court of Appeals filed an unpublished opinion finding no error, and on October 7, 2010, the Supreme Court of North Carolina dismissed notice of appeal to that court and denied discretionary review, and on May 16, 2011, the Supreme Court of the United States denied certiorari, and on August 15, 2011, the Supreme Court of the United States denied rehearing. State v. Lytle, 2010 N.C. App. Lexis 983, review denied, 702 S.E.2d 504, 2010 N.C. Lexis 816 (2010), cert. denied, __ U.S. __, 131 S. Ct. 2457, 179 L. Ed. 2d 1222 (2011), rehearing denied, __ U.S. __, 132 S. Ct. 59, 180 L. Ed. 2d 927 (2011). (copy of opinion at Exhibit 1, order denying review at Exhibit 2, order denying certiorari at Exhibit 3, order denying rehearing at Exhibit 4) Petitioner represented himself at trial with stand-by counsel Mr. James M. Bell. On appeal, Petitioner was represented by Ms. L.

Janye Stowers. Since his convictions, Petitioner has filed several state post-conviction motions and/or petitions seeking stenographic transcripts of his state court proceedings. (see copies Petitioner attached to his federal habeas application form) In addition, copies of these motions and/or petitions and corresponding orders denying the same, are contained in Petitioner's pro se petition for writ of supersedeas, also seeking copies of transcripts, filed in the North Carolina Court of Appeals on August 3, 2012. (Exhibit 5) Petitioner states that he needs these transcripts in order to file a "proper" post-conviction motion for appropriate relief (MAR). Id. On August 3, 2012, supersedeas and temporary stay was denied. (Exhibit 6) Petitioner dated his pro se federal habeas application form October 15, 2012, and filed it in this Court on October 22, 2012.

## Grounds for Relief

Petitioner contends: (1) he was arrested without a warrant and without probable cause; (2) he was denied effective assistance of counsel, due process and equal protection in violation of Miranda, Escobedo, and Wolf with regard to alleged statements he made; (3) he was denied effective assistance of counsel by not having counsel at important proceedings, such as special appearance and probable cause preliminary hearing; and (4) he was prosecuted without notice of intent to use documents and fingerprints from past convictions, as identifying objects, for habitual felon purposes.

## Statement of Facts

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> On 30 January 2008 at approximately 9:30 a.m., James C. Ransdell ("Ransdell") drove by his farm property on Dwight Rowland Road in Fuquay-Varina, Wake County, North Carolina. As he was driving by the property, he saw a red Ford pickup truck parked behind a barn near his office building during a time when "[n]ormally there is nobody up there." Ransdell first noted that the truck was "out of place," especially considering the house on the property was unoccupied, no farming activity took place on the property in January, and two "no trespassing signs" were posted at

the entrance to the property. Ransdell also saw a man, later identified as defendant, exiting the office building. Defendant did not have permission to be on Ransdell's property. As Ransdell approached, defendant "started forward . . . in a fast pace . . . jumped in his truck [and] took off." Ransdell contacted the Wake County Sheriff's Department ("WCSD") and provided them with the truck's license plate number. When law enforcement officers arrived at the property, Ransdell and the officers discovered the office door had been "jimmied" open with a screwdriver or similar device. Ransdell entered the office building and discovered that his replica revolver was missing.

Later that same day, at approximately 4:30 p.m., James Linden Stephenson ("Stephenson") arrived at his home at 7128 Mount Pleasant Road in Willow Springs, North Carolina. Stephenson noticed that his garage door "opened funny and pried up." Stephenson then observed that the back door of his home had been kicked open and a red Ford pickup truck was in his garage. Stephenson noticed that his gray 2000 Silverado pickup truck, which had been parked in his driveway, was missing along with tools and compact discs Stephenson kept inside the truck. He then contacted the WCSD. When the officers arrived, Stephenson accompanied the officers, searched the house, and discovered that Stephenson's Colt .380 semiautomatic handgun was missing, along with, inter alia, his daughter's laptop computer, jewelry, and sunglasses. Neither Stephenson nor his daughter gave anyone permission to enter their home to borrow or take any of the missing items.

At approximately 8:45 p.m. that evening, Detective Ben Farrell ("Detective Farrell") and Officer Whitehurst of the Morrisville Police Department ("MPD") responded to a 911 call directing them to the Extended Stay America hotel ("the hotel") in Morrisville, North Carolina. When Detective Farrell entered the lobby, a man identified as Mr. Morrison ("Morrison") approached him and told him that a man, later identified as defendant, was staying with him in the hotel room. Morrison stated that when he returned from work that day, he discovered defendant "had personal property that he didn't have that morning." Morrison believed the property did not belong to anyone in the room. Morrison gave his consent for Detective Farrell and Officer Whitehurst to enter the hotel room and investigate further.

When Detective Farrell entered the room, he saw defendant sitting in a chair. Detective Farrell identified himself and told defendant that he was investigating the ownership of items in the room. Detective Farrell asked defendant whether there were any items in the room that did not belong to him. Defendant said "yes," then produced a laptop computer with power cords. Detective Farrell asked defendant to help him find the owner of the property so that it could be returned. Defendant then "dropped his head" and stated, "either way you are going to arrest me. What's the difference?" Detective Farrell also asked defendant if any other property in the room beside the laptop did not belong to him. Defendant replied in the affirmative and

produced jewelry, a set of car keys, tools, and compact discs.

Defendant was arrested and indicted on three counts of felonious larceny, two counts of felonious breaking and entering, and possession of stolen goods. Defendant was subsequently indicted on the charge of attaining the status of an habitual felon for prior felony judgments. On 13 October 2008, following a hearing, the trial court granted defendant's motion to allow him to proceed pro se, and appointed James Bell as standby counsel.

On 23 December 2008, defendant filed a motion to dismiss the indictments "on grounds of fatal variance." On 24 December 2008, defendant filed a "Subpoena," "Request for Production of Documents by Subpoena," and subsequently a "Motion to Compel Subpoena," attempting to obtain his mental health records from Dorothea Dix Hospital, Johnston County Mental Health, Johnston County Jail, the North Carolina Department of Correction ("DOC"), Nash County Jail, and Wake County Jail. At a hearing on 13 February 2009, defendant denied being incompetent, but informed the trial court that he had psychotic tendencies.

At a pre-trial hearing on 20 February 2009, various motions made by defendant, his standby counsel, James Bell, and the State were heard by the trial court. The trial court granted defendant's request for production of his mental health records, involuntary commitments, in-patient and out-patient records. In addition, the trial court ordered all of the appropriate agencies to produce the records on or before 16 March 2009.

Defendant's case was called for trial on 16 March 2009 in Wake County Criminal Superior Court. Defendant orally moved the trial court to continue the trial to subpoena a witness and to obtain the records that were ordered regarding his diminished capacity and other mitigating factors. The court denied defendant's motion. On 17 March 2009, defendant received all of the records he requested. The court also granted defendant's request to subpoena five witnesses to appear on his behalf on 19 March.

At trial, the State asked the court to view the addresses in the indictments for case numbers 08 CRS 6460 and 6461 as well as the description of the building as a "residence" in case number 08 CRS 6460 as surplusage, and then moved to amend the indictments. Defendant objected. On 18 March, after the State rested its case, the trial court granted the State's request to amend the indictments. However, the trial court denied defendant's motion to dismiss the charges based on insufficiency of the evidence. Defendant presented no evidence. Defendant again moved to dismiss the State's case due to the insufficiency of the evidence and the trial court denied defendant's motion. The trial court also denied defendant's previous 23 December 2008 motion to dismiss the indictments.

-4-

> The jury returned verdicts finding defendant guilty on all charges. The court arrested judgment on the charge of possession of stolen property. The court consolidated judgment on the remaining charges and sentenced defendant as a Class C habitual felon to two consecutive terms of a minimum term of 120 months to a maximum term of 153 months in the custody of the DOC.

State v. Lytle, 2010 N.C. App. Lexis 983 (2010) (unpublished). (Exhibit 1)

**Legal Argument**

**1.     Statute of limitation defense.**

This statute of limitation defense is based on Petitioner's own representation of his post-conviction procedural history contained in his sworn, pro se federal habeas application form, and corresponding copies of state court pleadings and/or orders filed herewith. Furthermore, the one-year period of limitation contained in 28 U.S.C. § 2244(d)(1) applies to Petitioner's entire federal habeas action, on a claim-by-claim basis. See, Pace v. Diguglielmo, 544 U.S. 408, 416 n.6, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (application of the statute of limitation is on a claim-by-claim basis); Buchaman v. Bagley, 487 F.3d 979, 984 (6th Cir. 2007) (same); Fielder v. Varner, 379 F.3d 113, 117-21 (3rd Cir. 2004) (same), cert. denied, 543 U.S. 1067, 125 S. Ct. 904, 160 L. Ed. 2d 801 (2005).

Petitioner's case became final on direct appeal on May 16, 2011, the day the Supreme Court of the United States denied certiorari, and not when rehearing was later denied. See Lytle v. North Carolina, _ U.S. _, 131 S. Ct. 2457, 179 L. Ed. 2d 1222 (2011) (order denying certiorari) (Exhibit 3) and United States v. Segers, 271 F.3d 181 (4th Cir. 2001) (absent suspension order issued by United States Supreme Court or Justice thereof, the judgment of conviction becomes final for purposes of one-year period of limitation, when the United States Supreme Court denies certiorari on direct appeal, and not when petition for rehearing later denied), cert. denied, 535 U.S. 943, 122

S. Ct. 1331, 152 L. Ed. 2d 237 (2002). Petitioner's one-year period of limitation under 28 U.S.C. § 2244(d)(1) then ran for 365 days until it fully expired on Tuesday, May 15, 2012. Because Petitioner dated his pro se federal habeas application form October 15, 2012, and filed it in this Court on October 22, 2012, it is approximately five months out-of-time.

Furthermore, Petitioner has been aware, or through the exercise of due diligence should have been aware, of the factual predicate of all of his Grounds for Relief since at least the time his convictions became final on May 16, 2011. (Exhibits 1-2) See 28 U.S.C. § 2244(d)(1)(D) (one year period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). See also, Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding that one-year period was triggered under section 2244(d)(1)(D) on the date inmate could have discovered factual predicate "through public sources"); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (time starts under 2244(d)(1)(D) when inmate could have discovered factual predicate from public sources using due diligence), cert. denied, 553 U.S. 1076, 128 S. Ct. 2527, 171 L. Ed. 2d 806 (2008).

Next, on page 14, paragraph 18, of his pro se federal habeas application form, Petitioner sets forth his reasons why he believes his petition should not be deemed barred by the one-year period of limitation. First, he asserts that he has kept his challenges to his constitutional and fundamental rights violations pending through his direct review, pre-trial filings, and petitions to the Supreme Court of North Carolina and Supreme Court of the United States. As demonstrated above, however, Petitioner's case became final on direct review on May 16, 2011, the date the United States Supreme Court denied certiorari. (Exhibit 3) His one-year period of limitation under section 2244(d)(1) commenced on that date and fully expired 365 days later on Tuesday, May 15, 2012.

-6-

Next, Petitioner states that he has filed numerous motions and petitions to obtain "the negligently untranscribed stenographic transcripts" and the North Carolina Court of Appeals has either dismissed or denied these petitions without an evidentiary hearing. None of Petitioner's numerous pro se post-conviction motions and/or petitions, however, seeking copies of his transcripts, can serve to toll the one-year period of limitation under 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). (see copies attached to Petitioner's federal habeas application form) (see also Exhibit 5) See e.g., Lloyd v. Van Natta, 296 F.3d 630, 633-34 (7th Cir. 2002) (motions for transcripts do not toll and state's failure to provide transcripts does not qualify for equitable tolling), cert. denied, 537 U.S. 1121 (2003); Hodge v. Greiner, 269 F.3d 104 (2nd Cir. 2001) (state post-conviction motion seeking to obtain materials which might help develop claim, does not toll). See also, Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001) (lack of access to transcript does not preclude petitioner from commencing federal habeas corpus proceedings and does not warrant equitable tolling); Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002) (state court's delay in furnishing petitioner with transcript did not toll); Glasser v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) (rejecting equitable tolling argument based on alleged delay in receipt of transcript); United States v. Cicero, 214 F.3d 199, 201 (D.C. Cir. 2000) (Fact that prisoner's preparations for filing during the AEDPA one-year grace period were interrupted when he was stabbed and hospitalized, and when his legal papers became unavailable because he was transferred to a different prison, did not warrant tolling of one-year period of limitation.); United States v. Van Poyck, 980 F. Supp. 1108 (C.D. Cal. 1997) (§ 2255 case) (inability to get transcript and four general lockdowns over two month period of time

not sufficient).

Finally, Petitioner states that he has sought remedy through Administrative agencies, and attaches a pro se complaint he allegedly filed with the Judicial Standards Commission (JSC) and a letter to Mr. Thomas K. Maher, Executive Director of the Office of Indigent Defense Services. (see Petitioner's Attachments 9 & 10) First, this complaint and letter to the JSC and Mr. Maher do not constitute "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim" within the meaning of section 2244(d)(2), because neither of these entities has authority to grant Petitioner judicial review or relief on his current Grounds for Relief. See Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000) ("properly filed" state post-conviction application must be filed in accordance with state rules concerning form of document, applicable time periods and proper court and office for filing). Second, even if the complaint and letter to the JSC and Mr. Maher could constitute "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim," (which they do not), they still do not toll. That is because the complaint and letter to the JSC and Mr. Maher are requests for copies of transcript. As explained above, motions or requests for state court transcripts do not toll the one-year period of limitation.

In short, none of the reasons Petitioner sets forth on page 14, paragraph 18, of his pro se federal habeas application form, show his petition was timely filed or entitled to any form of equitable tolling.

Next, if in response to this memorandum, Petitioner asserts that he was unaware of the one-year period of limitation or only recently learned about it, it is no excuse. See Turner v. Johnson, 177 F.3d 390, 392 (5th Cir.) (neither petitioner's unfamiliarity with legal process nor his lack of

representation during applicable filing period merits equitable tolling of the one-year period of limitation on federal habeas petitions, regardless of whether this unfamiliarity is due to illiteracy or any other reason), cert. denied, 528 U.S. 1007 (1999); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("But, even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."); Cross-Bey v. Gammon, 322 F.3d 1012, 1215 (8th Cir. 2003) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)), cert. denied, 540 U.S. 971, 124 S. Ct. 442, 157 L. Ed. 2d 320 (2003); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001) (state prisoner was not entitled to equitable tolling of one-year period of limitation since ignorance of the law, even for a pro se prisoner, does not excuse late filing), cert. denied, 531 U.S. 1194, 121 S. Ct. 1195, 149 L. Ed. 2d 110 (2001), citing Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999), cert. denied, 531 U.S. 1164, 121 S. Ct. 1124, 148 L. Ed. 2d 991 (2000); Baker v. Norris, 321 F.3d 769, 772 (8th Cir. 2003) (ignorance of the law was no excuse for failing to meet the one year period of limitation), cert. denied, 539 U.S. 918, 123 S. Ct. 2283, 156 L. Ed. 2d 135 (2003).

Next, if in response to this memorandum, Petitioner asserts that he did not receive copies of any state court opinions or orders in the mail until sometime after they were entered, it does not toll. See Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (en banc) (one-year period of limitation remains tolled under § 2244(d)(2) only until the state appellate court denies the post-conviction petition and not until the petitioner receives a copy of the denial order in the mail), cert. denied, 541 U.S. 905, 124 S. Ct. 1605, 158 L. Ed. 2d 248 (2004); Spencer v. Sutton, 239 F.3d 626, 627-29 (4th Cir. 2001).

Next, if Petitioner contends that he submitted his case to N.C. Prisoner Legal Services, Inc., (PLS) for review and they declined representation, or held on to it for some or all of the one-year

period of limitation before declining representation, it is no excuse. The Middle District has held that a prisoner's assertion he missed the one-year period of limitation because he was waiting on PLS to complete a review of his case, is insufficient to equitably toll. See Dockery v. Beck, No. 1:02CV00070 (M.D.N.C. August 1, 2002) (J. Beaty adopting recommendation of M.J. Eliason) (unpublished) (See page 5 of the Dockery recommendation, which was adopted in full by the district court. A copy of both the Dockery recommendation and final order and judgment are at Respondent's Exhibit 7) Furthermore, PLS must necessarily cull through untimely or meritless habeas cases such as the case at bar. In short, Petitioner could still have filed a timely federal habeas petition since he has demonstrated his ability to make such filings. There was no state created impediment to his timely filing his current federal habeas petition.

In addition, by providing legal services to prisoners through PLS, the state has no further obligation to provide prison law libraries. See Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), overruled in part on other grounds, Lewis v. Casey, 518 U.S. 343, 354, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). See also, Williams v. Leek, 584 F.2d 1336, 1330-40 (4th Cir. 1978) (where state provided legal assistance to prisoners to review their cases, access to law libraries not required), cert. denied, 442 U.S. 911, 99 S. Ct. 2825, 61 L. Ed. 2d 276 (1979) and United States v. Neeley, 63 Fed. Appx. 671, 672 (4th Cir. 2003) ("The government must provide a criminal defendant with access to an adequate law library or adequate access to counsel, but not both.").

Also, equitable tolling is not available unless Petitioner pursued his rights diligently and circumstances external to the party's own conduct prevented timely filing. See Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 177 L. Ed. 2d 130, 145 (2010) (equitable tolling available when petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way' and prevented timely filing.'") (citation omitted); Lawrence v. Florida, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085, 166 L. Ed. 2d 924 (2007) (Assuming without deciding equitable tolling available, petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.") and Rouse v. Lee, 339 F.3d 238 (no equitable tolling for North Carolina petitioner in capital case who filed federal habeas petition one-day late due to miscalculation of time period by counsel). Petitioner has not met this standard for equitable tolling.

In sum, Petitioner's entire federal habeas petition should be summarily dismissed on statute of limitation grounds.

**2.     Statement regarding the merits of Petitioner's claims.**

For the reasons and authorities set forth above, Petitioner's entire federal habeas petition should be summarily dismissed on statute of limitation grounds. Therefore, it should be unnecessary at this time to fully address the merits of Petitioner's claims. Furthermore, it would eliminate the benefit to Respondent and circumvent the purpose of section 2244(d)(1), to require a full answer and response on the merits of a federal habeas petition so clearly out-of-time. In addition, the Fourth Circuit has recognized it is appropriate for a district court to adjudicate and grant a respondent's motion to dismiss a federal habeas petition on statute of limitation grounds, before requiring a full answer on the merits. See Rouse v. Lee, 339 F.3d 238, 253 n.17 (district court may rule on state's motion to dismiss on statute of limitation grounds before receiving an answer from the state on the merits). Also, the applicable rules permit such action. See Habeas Rule 4 ("If the petition is not [summarily] dismissed, the judge must order the respondent to file an answer, motion or other response. . . ."); Advisory Committee Notes to Rule 4 (2004 Amendments) (observing that this rule

"reflects that the response to a habeas petition may be a motion"); Habeas Rule 5, Advisory Committee Notes (2004 Amendments) (noting that "Rule 4 permits th[e] practice" of a "respondent fil[ing] a pre-answer motion to dismiss the petition."). This approach makes sense because "a dismissal may be called for on procedural grounds, which may avoid burdening the respondent with the necessity of filing an answer on the substantive merits of the petition." Rule 4, Advisory Committee Notes (1976 Adoption). See also, Chapman v. Herron, 1:11CV 194 (M.D.N.C. August 2, 2012) (unpublished order of M.J. Auld) (Respondent may properly file motion to dismiss on statute of limitation grounds and seek adjudication of that issue first, before filing answer and briefing on merits). (Exhibit 8)

If, after adjudicating the above statute of limitation defense, this Court deems full briefing on the merits necessary, the undersigned will of course do so upon request. As an initial answer, however, Respondent denies that Petitioner is entitled to federal habeas relief for the reasons and authorities set forth above.

  **3. Non-exhaustion defense.**

At various places in his sworn, pro se federal habeas application form, Petitioner admits he has not filed a state post-conviction motion for appropriate relief (MAR). See N.C.G.S. § 15A-1415(b) (2011). (see federal habeas application form at pages 8, 9, 10, 11, 12, & 13) He repeatedly states that he needs transcripts in order to file his MAR. Id. Furthermore, a review of the North Carolina Court of Appeals' opinion, shows he did not fairly raise the substance of his current Grounds for Relief on direct appeal. (Exhibit 1) Thus, Petitioner, by his own admission, has failed to exhaust state remedies as required by 28 U.S.C. § 2254(b)(1)(A). See also, Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982) (complete exhaustion rule). In order to properly

exhaust state remedies, Petitioner should be required to file a post-conviction MAR in the Superior Court of Wake County, raising his federal constitutional claims, pursuant to section 15A-1415. If not satisfied with that courts adjudication, he must then file a certiorari petition in the North Carolina Court of Appeals, pursuant to N.C.G.S. § 15A-1422(c)(3) (2011) and N.C. R. App. P. 21(e) (2013), in order to exhaust state remedies. Respondent does not waive non-exhaustion. Furthermore, contrary to Petitioner's assertion, he does not have to have copies of transcripts in order to file his MAR. Also, Petitioner, through counsel, received copies of the trial transcripts during his state appeal.

In addition, the Original Committee Note to Habeas Rule 5, acknowledges that it is appropriate for a Respondent to move to dismiss on grounds of non-exhaustion without filing a formal answer. See Original Committee Note to Habeas Rule 5 ("An alleged failure to exhaust state remedies as to any ground in the petition may be raised by a motion by the attorney general, thus avoiding the necessity of a formal answer as to that ground."). By filing this initial answer and the motion to dismiss on non-exhaustion grounds, Respondent does not waive any applicable defense, whether substantive, procedural, or statute of limitation, to any of Petitioner's claims or assertions.

Furthermore, even after Petitioner exhausts state remedies, his federal habeas petition will still be out-of-time under the one-year period of limitation contained in section 2244(d)(1), because the time period after his case became final on direct review on May 16, 2011, but before he files his post-conviction MAR, is not tolled under section 2244(b)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). See Minter v. Beck, 230 F.3d 663 (4th Cir. 2000) (time period after case became final

for purposes of direct review but before filing of post-conviction motion for appropriate relief is not tolled from one-year period of limitation); Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 597 (M.D.N.C. 2004) (after direct review final, post-conviction MAR tolls one-year period of limitation when it is initially filed), appeal dismissed, 145 Fed. Appx. 444 (4th Cir. 2005). See also, Jurdo v. Burt, 337 F.3d 638 (6th Cir. 2003) (where state law did not have time limit on filing state post-conviction motion, 19 month delay in filing state motion barred federal habeas review because federal one-year period of limitation ran out during the interim).

In sum, as an alternative defense, Petitioner has failed to exhaust state remedies and Respondent does not waive non-exhaustion. In any event, Petitioner is not entitled to a writ of habeas corpus.

Respectfully submitted, this the 5th day of June, 2013.

>ROY COOPER
>ATTORNEY GENERAL
>
>/s/ Clarence J. DelForge, III
>Clarence J. DelForge, III
>Assistant Attorney General
>P.O. Box 629
>Raleigh, N.C. 27602
>(919) 716-6571
>cdelforg@ncdoj.gov
>State Bar No. 12925

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following: N/A, and I hereby certify that I have mailed the document to the following non CM/ECF participants:

    Terrence Wayne Lytle
    No. 0252576
    Albemarle Correctional Institution
    P.O. Box 460
    Badin, N.C. 28009

    Respectfully submitted,

    ROY COOPER
    ATTORNEY GENERAL

    /s/ Clarence J. DelForge, III
    Clarence J. DelForge, III
    Assistant Attorney General
    P.O. Box 629
    Raleigh, N.C. 27602
    Phone: (919) 716-6571
    Fax:    (919) 716-0001
    Email: cdelforg@ncdoj.gov