IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-HC-2263-D

| | |
|---|---|
| TERRENCE WAYNE LYTLE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>LAWRENCE PARSONS, )<br>)<br>Respondent. ) | **ORDER** |

Terrence Wayne Lytle ("petitioner" or "Lytle"), a state inmate, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On May 7, 2013, the court reviewed the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and allowed it to proceed [D.E. 4]. On June 5, 2013, respondent filed an initial answer to the petition [D.E. 8] and a motion to dismiss [D.E. 9]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Lytle about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 11]. On June 27, 2013, Lytle responded in opposition [D.E. 12], and moved for an extension of time to file a supplemental response [D.E. 13]. The court grants the motion and reviews all of Lytle's materials filed in opposition to the motion to dismiss, including Lytle's supplemental response [D.E. 14]. As explained below, the court grants the motion to dismiss.

I.

Before addressing the motion to dismiss, the court briefly recites the crime underlying Lytle's conviction and sentence.

On 30 January 2008 at approximately 9:30 a.m., James C. Ransdell ("Ransdell") drove by his farm property on Dwight Rowland Road in Fuquay-Varina, Wake

County, North Carolina. As he was driving by the property, he saw a red Ford pickup truck parked behind a barn near his office building during a time when "[n]ormally there is nobody up there." Ransdell first noted that the truck was "out of place," especially considering the house on the property was unoccupied, no farming activity took place on the property in January, and two "no trespassing signs" were posted at the entrance to the property. Ransdell also saw a man, later identified as [Lytle], exiting the office building. [Lytle] did not have permission to be on Ransdell's property. As Ransdell approached, [Lytle] "started forward . . . in a fast pace . . . jumped in his truck [and] took off." Ransdell contacted the Wake County Sheriff's Department ("WCSD") and provided them with the truck's license plate number. When law enforcement officers arrived at the property, Ransdell and the officers discovered the office door had been "jimmied" open with a screwdriver or similar device. Ransdell entered the office building and discovered that his replica revolver was missing.

Later that same day, at approximately 4:30 p.m., James Linden Stephenson ("Stephenson") arrived at his home at 7128 Mount Pleasant Road in Willow Springs, North Carolina. Stephenson noticed that his garage door "opened funny and pried up." Stephenson then observed that the back door of his home had been kicked open and a red Ford pickup truck was in his garage. Stephenson noticed that his gray 2000 Silverado pickup truck, which had been parked in his driveway, was missing along with tools and compact discs Stephenson kept inside the truck. He then contacted the WCSD. When the officers arrived, Stephenson accompanied the officers, searched the house, and discovered that Stephenson's Colt .380 semiautomatic handgun was missing, along with, *inter alia,* his daughter's laptop computer, jewelry, and sunglasses. Neither Stephenson nor his daughter gave anyone permission to enter their home to borrow or take any of the missing items.

At approximately 8:45 p.m. that evening, Detective Ben Farrell ("Detective Farrell") and Officer Whitehurst of the Morrisville Police Department ("MPD") responded to a 911 call directing them to the Extended Stay America hotel ("the hotel") in Morrisville, North Carolina. When Detective Farrell entered the lobby, a man identified as Mr. Morrison ("Morrison") approached him and told him that a man, later identified as [Lytle], was staying with him in the hotel room. Morrison stated that when he returned from work that day, he discovered [Lytle] "had personal property that he didn't have that morning." Morrison believed the property did not belong to anyone in the room. Morrison gave his consent for Detective Farrell and Officer Whitehurst to enter the hotel room and investigate further.

When Detective Farrell entered the room, he saw [Lytle] sitting in a chair. Detective Farrell identified himself and told [Lytle] that he was investigating the ownership of items in the room. Detective Farrell asked [Lytle] whether there were any items in the room that did not belong to him. [Lytle] said "yes," then produced a laptop computer with power cords. Detective Farrell asked [Lytle] to help him find the owner of the property so that it could be returned. [Lytle] then "dropped his

2

head" and stated, "either way you are going to arrest me. What's the difference?" Detective Farrell also asked [Lytle] if any other property in the room beside the laptop did not belong to him. [Lytle] replied in the affirmative and produced jewelry, a set of car keys, tools, and compact discs.

[Lytle] was arrested and indicted on three counts of felonious larceny, two counts of felonious breaking and entering, and possession of stolen goods. [Lytle] was subsequently indicted on the charge of attaining the status of an habitual felon for prior felony judgments.

State v. Lytle, 204 N.C. App. 597, 696 S.E.2d 925, 2010 WL 2367272, at *1–2 (2010) (unpublished table decision), rev. denied, 364 N.C. 438, 706 S.E.2d 467 (2010), cert. denied, 131 S. Ct. 2457 (2011).

On March 19, 2009, in Wake County Superior Court, a jury convicted Lytle of all counts in the indictment, and the trial court imposed two consecutive sentences of 120 to 153 months' imprisonment. Pet. [D.E. 1] 1; see Lytle, 2010 WL 2367272, at *3. Lytle appealed, and on June 15, 2010, the North Carolina Court of Appeals found no error. Pet. 2; see Lytle, 2010 WL 2367272, at *14. On October 7, 2010, the Supreme Court of North Carolina denied Lytle's petition for discretionary review. Pet. 2; see State v. Lytle, 364 N.C. 438, 706 S.E.2d 467 (2010). On May 16, 2011, the United States Supreme Court denied Lytle's petition for certiorari. Pet. 3; see Lytle v. North Carolina, 131 S. Ct. 2457 (2011). On August 15, 2011, the United States Supreme Court denied Lytle's motion for rehearing. Pet. 3; see Lytle v. North Carolina, 132 S. Ct. 59 (2011).

On March 8, 2012,[1] in Wake County Superior Court, Lytle filed a motion for preparation of certain stenographic transcripts, which the court denied on May 9 and 11, 2012. Pet. 4; Atts. [D.E.

---

[1] Giving Lytle the benefit of the prison mailbox rule, and construing the record in the light most favorable to Lytle, the court considers Lytle's motions as filed on the date he signed them, rather than on the date any court received them for filing. See Houston v. Lack, 487 U.S. 266, 275–76 (1988); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 736 (4th Cir. 1991) (per curiam).

3

1-1] 2–11, 17–18. On July 30, 2012, Lytle filed a motion for temporary stay and writ of supersedeas in the North Carolina Court of Appeals seeking transcripts, which the court denied on August 3, 2012. Mem. Supp. Resp't's Mot. Dismiss [D.E. 10] Exs. 6–8. Lytle has not filed a motion for appropriate relief ("MAR"), and contends he cannot do so without the transcripts. Pet. 12.

On October 15, 2012, Lytle signed the instant petition and filed it on October 22, 2012. Lytle asserts four grounds for relief: (1) he was arrested without a warrant and without probable cause; (2) he was denied effective assistance of counsel, due process, and equal protection concerning alleged incriminating statements he made; (3) he was denied effective assistance of counsel by not having counsel at important proceedings; and, (4) he was prosecuted without notice of intent to use documents and fingerprints from past convictions, as identifying objects, for habitual felon purposes. Pet. 5–12.

II.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007);

4

Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss filed in a section 2254 proceeding "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the [section] 2254 petitioner to be true." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (quotation omitted); Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). As part of a Rule 12(b)(6) motion, a court also may consider a challenge based on the one-year statute of limitations. In ruling on a motion to dismiss, the court may consider the record of the state habeas proceeding, including affidavits and evidence presented in such proceedings, as well as other matters of public record. See, e.g., Walker, 589 F.3d at 139.

Respondent argues that the petition is untimely. Mem. Supp. Resp't's Mot. Dismiss 5–11. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that any application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court be filed within one year of the latest of certain dates. 28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005). The limitation period begins running from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

5

The limitation period under section 2244(d)(1) is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from initial filing in state court until final disposition in the highest state court. Taylor, 186 F.3d at 560–61. The period between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief counts against the one-year limitation period. See, e.g., Holland v. Florida, 130 S. Ct. 2549, 2554, 2556 (2010); Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). The statutory period then resumes after the state court of appeals denies post-conviction relief to a petitioner. See, e.g., Holland, 130 S. Ct. at 2556; Hernandez, 225 F.3d at 438.

Subsection (A) of section 2244(d)(1) requires the court to determine when petitioner's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Lytle's conviction became final on May 16, 2011, the day the United States Supreme Court denied certiorari. See Gonzalez v. Thaler, 132 S. Ct. 641, 653–54 (2012); Holland, 130 S. Ct. at 2555; Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002). The statutory period then began to run on May 16, 2011, and ran for 365 days until it expired in May 2012. See, e.g., Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Lytle's March 2012 motions for transcripts did not serve to toll his time for filing a habeas petition. See Artuz v. Bennett, 531 U.S. 4, 8–11 (2000); Woodward v. Cline, 693 F.3d 1289, 1294 (10th Cir.) ("[S]everal sister circuits have ruled that a motion seeking discovery but not requesting relief from a judgment does not toll the AEDPA limitations period." (collecting cases)), cert. denied, 133 S. Ct. 669 (2012); Harris v. Dir., Va. Dep't of Corr., 282 F. App'x 239, 241 (4th Cir. 2008) (per curiam) (unpublished). Accordingly, absent equitable tolling, Lytle's October 15, 2012 petition is untimely.

6

Under AEDPA, the one-year statute of limitations is subject to equitable tolling. Holland, 130 S. Ct. at 2560–62. Equitable tolling applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (quotation omitted); see Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). A court may allow equitable tolling under section 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir.), cert. denied, 132 S. Ct. 64 (2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

Lytle relies on his diligence before and after his trial, his inability to obtain assistance from North Carolina Prisoner Legal Services, and the lack of prison law libraries as tolling his time for filing his petition. Resp. Opp'n Resp't's Mot. Dismiss [D.E. 12] 2–14. Lytle, however, has failed to plausibly allege that an extraordinary circumstance prevented him from filing his petition. Unfamiliarity with the legal process, lack of representation, and even illiteracy do not constitute grounds for equitable tolling. See, e.g., United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); Harris, 209 F.3d at 330–31 (collecting cases); see also Taylor v. Michael, 724 F.3d 806, 811 (7th Cir. 2013); Bryant v. Ariz. Atty. Gen., 499 F.3d 1056, 1060 (9th Cir. 2007); Cross–Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir. 2003). To the extent Lytle relies on his mental competency as a basis for tolling, Pet. 2, "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." Ata v. Scutt, 662 F.3d 736, 741–42 (6th Cir. 2011) (collecting cases); see, e.g., Harris, 209 F.3d at 330;

7

Robison v. Hinkle, 610 F. Supp. 2d 533, 539–40 (E.D. Va.), aff'd, 357 F. App'x 517 (4th Cir. 2009) (per curiam) (unpublished). Accordingly, Lytle's October 2012 petition is dismissed as time-barred.

Alternatively, the court dismisses the petition for Lytle's failure to exhaust his state-court remedies. Section 2254's exhaustion provision requires "state prisoners [to] give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a motion for appropriate relief ("MAR") and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422. Lytle did not raise the claims in his petition on direct appeal and admits that he has never filed an MAR. Pet. 12–14.

III.

In sum, the court GRANTS Lytle's motion for extension of time [D.E. 13] and respondent's motion to dismiss [D.E. 9], and DISMISSES Lytle's application for a writ of habeas corpus as time-barred, or in the alternative as unexhausted [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The clerk shall close this case.

SO ORDERED. This 24 day of December 2013.

JAMES C. DEVER III
Chief United States District Judge